Good morning, Your Honors. I am John Markham for Appellant Naked Walker. May I reserve two minutes for rebuttal? Yes. Your Honor, this is a case where a young, very, very promising student who had already amassed a Ph.D. and was in law school and had a very, very promising future ahead of her with a lucrative job here with one of the best friends in Boston was found guilty of plagiarism, which is the kiss of death. It's a very serious finding. The judge below decided this found specifically that there is simply no way, this is her finding, simply no way that any third year Harvard law student could have thought that this particular draft was not submitted for the purposes of the plagiarism rule. The plagiarism rule itself says all work submitted must be clean plagiarism, whether inadvertent plagiarism or not. Our point is not that this wasn't plagiarism. If this was submitted for the purposes of being vetted for plagiarism, it clearly was. In fact, if this had gone to a jury trial, as I had wished, as my client had wished, exhibit one for we, the plaintiffs, would have been look at this article, look at the 23 misattributions that are in this article. Nobody would have reasonably thought this article was ready to be vetted for plagiarism, particularly a third year law student who for the last two years had herself been checking other people's papers because she was a site checker. For the judge to say simply arrogate to the court herself the determination about whether or not this was a reasonable expectation of the student in reading the particular rule, which is the plagiarism rule, was we submit not proper. That should have been a jury question. In Massachusetts, we're bound by It has the following definition of plagiarism. I'm sorry, of a contract provision in a handbook. How the courts are supposed to interpret that provision in a disciplinary setting. And we're not talking here about grades. No court is going to say, gee, I think he should have gotten a B plus and you gave him a B minus, professor. That's not what we're the rule for you when you turn in work. This is the rule whether you can have beer in your room, whatever. And Massachusetts says, and I quote, we, the courts, employ the standard of reasonable expectation in interpreting these rules. What meaning the party making the rule, the university, should reasonably expect the other party, the review such factual allegation to determine whether Schaer, the student, has asserted facts which establish that Brandeis failed to take into account his reasonable expectation. Let's assume here, getting at what the district court judge did, that she had just taken an article written by someone else, copied it verbatim, every comma word, everything, just changed her name, the author's name to her name, and then submitted it to the Journal of Law and Technology for editing, or handed it to them for editing. Wouldn't that, is there any way to view that other than as palming off someone else's work as your own, in other words, plagiarism? It's plagiarism. There's no doubt that that would be plagiarism. Isn't what the district court said here is that her article came so close to what I just described, the copying and the borrowing and the non-attribution, not just misattribution, but complete non-attribution in many instances, was so great that there's no way to reasonably view this as other than giving someone something representing that it's one's own when it isn't? Well, that's the key difference between your hypothetical, Your Honor, and what happened here, because obviously if you turn something over and this is your work and it's ready to be vetted for plagiarism, then not only are you monumentally stupid, but it's clearly plagiarism. Here, it was accompanied by facts which drive the inquiry of reasonableness. Reasonableness doesn't happen in the way that the judge made it happen, although the judge herself said in her ruling that this was submitted. We're not talking about whether she ruled it was plagiarism. Everybody thought it was plagiarism, were it final, because there were so many non-attributions. The judge said there's no way a third-year Harvard Law student, well, that's a fact that she took into account in determining that using objective standard, that this wouldn't be vetted for plagiarism. For what reason did she hand it to them, other than to be making a representation that this is my work and you can now go forward and do your work with respect to it? That's a very good question. I would tell the jury the following answer. She was two days late. Her computer had been cratered. She was two days late. Everybody else had turned in their work. The editors-in-chief emailed her and said, get your work in. Everybody else has gotten their work in. You need to get your work in. Your work, your work, your work. Right. And so she hands them something. Seems to me, isn't she implicitly representing that's your work? If she hadn't said anything, Your Honor, but I cite in my brief at pages 13 through 19 all of the emails that she sent that say, it's not done. I need to do more work. I'm working on it still. She went to an editor that she found in the computer reconstruction place where she had went to try to get her computer fixed. And that editor, Wilson, she enlisted and that editor volunteered. Okay, I'll help you catch up. I'll help you put it back together. She said all of those things. They bear on an objective, reasonable assessment. Because she didn't give it to them and say, this is mine. She gave it to them and said, it still needs work. I still have to put it together. I'm still working on it. But I'm still working on it. I mean, when you look at large segments in this that have no quote marks around them, have no citation at all, and there's no evidence that it ever had the quote marks around them, how does the person who receives that article understand it as being anything other than, this is my work. It might have a bunch of mistakes in it, so the editing is going to be rough. Your Honor, I come back simply to the same answer. The question under Massachusetts state law is whether a student who says, I'm still working on it, it still needs work. If somebody came into my office the night before I submitted a brief to you folks and looked at it, it wouldn't have all the quotation marks necessarily on it. I saved that for the end. I go over and vet all of that stuff at the end. So she lost a lot of her data. She told them explicitly, and the question is whether or not where the standard is, the reasonable expectation of the student in the circumstances, you can abstract it from all the circumstances and not ask all the questions that you did, Your Honor. The judge should have addressed those if this was to be decided by the court. She didn't. She just ignored them and said nobody. And it wasn't nobody. There were a lot of attenuating circumstances here that drive the question of reasonableness, and it should be we submit a jury question. But she had a hearing underlying at Harvard where she had a chance to get this all out there, and essentially this is an administrative ruling by Harvard after listening to her. Yes, she did. But Harvard, we contend, was proceeding on the assumption that it was submitted, that that was not the issue at Harvard. The issue was whether it was plagiarism. And in any event, one does not give deference in the courts in Massachusetts to the decision of the university. Used to. Still do with respect to grades. But the cases cited by Harvard for deference are where there is no contract provision, is no handbook provision to which the court looks. If there is a handbook provision, you have to look at it under the reasonableness. Right, but she had some process. She had some process. I'm not saying we're bound to follow it or not, but she had, there was a process. She had a process, and the process that she had was Harvard's process, which is fairly elaborate. We're not on this appeal criticizing the process, but what we're saying is if there's a misdefinition, it's like a bad jury instruction. It doesn't matter how well the rest of the trial went. It's a bad jury instruction. This appeal really is just on how you define the word submitted. Yes. Doesn't it just boil down to that? How do you define submitted? No, how a reasonable student would expect that word to be defined in this context. A reasonable third year or first year, or just a reasonable person? It doesn't matter. I think as Judge Zobel did, you have to look at the facts of the case. She was a third year. She wasn't a puppy who had just come in. That's a fact, but there are other facts, none of which were taken into account, and they should have been. It should not have been decided summarily. By the way, the draft that she submitted the week before, when her draft before the last one was submitted, was turned over. The same questions could be asked, Your Honor, because at that draft she didn't have those citations around either. Why wasn't she deemed for plagiarism then? Because it was a work in progress and it would have been unfair given her expectation. Hey, wait a minute. This isn't my last draft. This is my second to last draft. Harvard goes out of its way in its brief to point out that the earlier drafts had the same problem. She wasn't coughed up for plagiarism. Why? Because nobody would reasonably think that she should be. She told them something that a jury should consider whether or not. Speaking of juries, the jury is not out in Maine about whether the ICE is going to stay still. It's a little early for that, Your Honor. Good morning, Your Honors. I'm Darrell Laff on behalf of Harvard and the two individual defendants in this case, Professor Weinreb and Dean Cosgrove. The question presented for the court in this case is whether Harvard's decision to discipline a student for plagiarism should be overturned where the plagiarism rule plainly and unambiguously applies to all work that a student submits without any exception for incompleteness or drafts or readiness for publication and even without any exception for a student who plagiarizes inadvertently. I thought the issue was whether there was a breach of contract. It is, Your Honor. The courts in this circuit and in Massachusetts, and my brother is correct that, of course, Massachusetts law applies here. Courts reviewing cases like this in which a student challenges the imposition of discipline by a private university view the analysis as one that is contractual but with a bit of a twist. The university-student relationship is deemed to be contractual in nature, but in reviewing what that contract is and what it means, the court interprets that contract using the standard of reasonable expectation that has been settled law in this circuit for 40 years. You don't disagree that it's the reasonable expectation of both parties, do you? I agree that the standard that is settled law in this circuit has an element in which the student's expectations are considered. But at the end of the day, the standard is what should the university reasonably expect a student to understand. Do you mean the student's subjective expectations or the student's objectively reasonable expectations? The student's objectively reasonable expectations. But there's a reason why the standard isn't just framed in those words. This court for 40 years could have been saying, we look at these cases by determining what the student reasonably could expect. The court could easily write its decisions that way if it wanted to, but it hasn't. For 40 years it said, we look at these cases by considering what the university reasonably should expect the student to understand. That brings into the equation the second fundamental principle that these cases need to be decided in light of, and that is the principle that courts do not interfere with the academic judgments of private universities. Whether we're talking about academic conduct or other types of student misconduct, the law in this circuit in Massachusetts is well settled that the court does not interfere with those judgments as long as the student got a process that was basically fair and what the university did was not arbitrary and capricious. But we don't defer to any fact-finding made by the university here, do we? I would say that there absolutely is an element of deference. And what precedent do you have that the federal court in a breach of contract action should defer to fact-finding made by the university in its proceeding? Those are the cases cited in our brief, Your Honor. It includes the Cloud case. It includes the Covini case. It includes the Shire case, I would say, Your Honor. There's legions of cases, Cloud, Covini, and Shire being the three upon which we principally rely. What the court has said over and over again, not only this court but also the Massachusetts courts, is that as long as the student got a fundamentally fair process and there was some reasonable basis for the university's decision, we are not going to interfere with it. And here, as the court has noted... I'm looking at Cloud and it says a deferential standard of review applies when there is no contractual right to a hearing. The Cloud, yes. But if you look at all of these cases, Your Honor, it's clear, and we make this point in our brief, that the deferential standard applies whether there's a hearing or not. The law in Massachusetts, as elsewhere, is that a university can handle student discipline either with or without a formal hearing. It has that right. Where it has a hearing process, the court needs to look at the question whether that hearing was conducted substantially in compliance with the rules that the university set out for such a hearing. But there's no question that the deference to university decision-making applies whether that decision was arrived at with a formal hearing or by the decision of a dean acting unilaterally or however the university reaches that decision. And we cite those cases in our brief. I would also make the point that going back to the standard of reasonable expectation, while we think Ms. Walker has misstated what that standard is and tries to omit the element of deference, it doesn't matter what the standard is. However the court wants to parse that reasonable expectation standard, Judge Sobel's decision should be upheld. And the reason for that is because the facts on which Ms. Walker's argument relies simply don't exist in the record. She wants the court to believe that there's evidence in the record a computer virus ate her homework. There is no such evidence. But didn't she say that it did? She said that it did. So first-person eyewitness testimony is usually what we call evidence. It might be persuasive in a case different from this one. Now you're talking about whether it's persuasive or not. But there's clearly evidence. I should rephrase it more articulately. It might create a genuine issue of disputed fact deserving of trial on a record different from this one where she has admitted, and the evidence is undisputed, that the failure of attribution in this article existed at every step along the way. Let me ask you this. Suppose when she handed in the article she said, Look, I'm really running behind. This is going to have large segments in it that are word for word from someone else's, and it's not my working, and I haven't got the quote marks or the cites in yet, but I'm giving it to you so you get a sense of the gist. Would that be plagiarism under this? It would be, I would say, two things. Number one, it would absolutely be within Harvard's right to deem that to be plagiarism. Even though the person is not representing their own work? Under Harvard's strict rule, I think Harvard would have the right to interpret it in that way. Here we don't need to reach that particular question because there is no evidence in the record to support the claim that she told any editor that attributions were missing. Your question is to count. What about her, turn to her conversation with, I believe it's Ungberg, Andrew Ungberg? Yes. Didn't she tell him that there's a problem with the quotations and the citations specifically, and she was working on those? She said, and I think Your Honor drilled right down with my brother on this conversation and this issue. What she said was, and what my counsel just said, was that more work was needed. More work needed to be done. I'm still working on it. It still needs work. All of those things are very different from saying there are attributions here that are missing and you need to understand that there are citations here that need to be provided that aren't here yet. What about when she said, I was talking about fixing quotations, comma, fixing citations? How do you deal with that? It's completely different from saying citations are missing. Let's remember the context here. She's providing this final draft to go into the tech edit process, the very purpose of which, the whole purpose of which, is to check the accuracy and completeness of her citations. If all Mr. Ungberg hears is, I'm still working on the citations, there's citations that need to be fixed, that's something the tech editors do. That's what they're there for. That is a completely different thing from revealing, and there's no evidence that she revealed, there are citations actually missing. You can't check citations that aren't there at all. This is a very different case from the one that you've hypothesized. Aren't citations just a category of the larger statement that it's not done? And didn't the Harvard editor tell her to submit it as is at the time that she said she was still working on it? The editors told her, the deadline has come and gone for you to submit your final draft. You're not being fair to the editors. If you don't get yours in like everybody else has gotten it in, you need to submit your draft. She says, here it is, but I still need to work on it, I still want to work on it. That in no way, shape, or form is a revelation that this document is a collage of plagiarism which completely lacks quotation marks and attributions from the many works that she copied from wholesale. It's a completely different set of facts that this record simply doesn't support. But why doesn't that go to the jury? Her testimony is that that is what she intended by the comment. The question, it doesn't go to the jury because the question is, could Harvard reasonably deem this to be an act of plagiarism in light of the wording of that plagiarism rule which is strict and unambiguous and has no room for lack of completeness or drafts or anything of the like and it doesn't go to the jury where every one of these issues, what she said to Ungberg, what she said to Volzin, was addressed. But I thought part of it was also, could Harvard believe that the student had a reasonable expectation? Regardless of how one views the reasonable expectation standard, she could not reasonably expect that the plagiarism rule did not apply to this final draft and Harvard's rejection of her arguments is entitled to deference. Thank you. When two days after the draft was due, she got word from the two editors-in-chief. They did not say, we need your final draft. If you look in the record, they say, we need your draft. Her answer was, still working on it. Your Honor, I respectfully submit that the questions that were being asked of Mr. Lapp are questions that the jury should have been debating. Well, what does this mean? What does she mean by this? When she said not complete, does that mean citations or is that just a subset of what she was talking about? Those are good questions and those are for a jury. You cannot simply abstract the word submit and just take it as you, the judge, think one particular dictionary defines it as and say that's what it means. Nobody could interpret it differently. Abstract it from the facts. It just doesn't work that way when the test is reasonable. How do you respond to the deferential review point, specifically the reliance on coveny, which says if school officials act in good faith and on reasonable grounds, their decision to suspend or expel a student will not be subject to successful challenge? As I understand your argument, we should give no deference to Harvard. We should just treat this as a normal breach of contract action between two parties. The cases are clear, Your Honor, that where there is a handbook provision, the deference doesn't apply. So you say the whole administrative review type proceeding that your brother wants us to adopt goes out the window if there is a handbook? If there is a handbook which the court finds a question of fact as to which a reasonable student would expect in these circumstances for this to mean, well, this isn't being submitted. I've told them I'm still working on this. I've told them I want to help with the citations. When she sent over that draft two days late, say she was still working on it, she had to, if I may just finish this point, she had to take over all of the sources that she had referred to and she took them over to hard copy because they wouldn't go into her computers too big to be transmitted by electronically. So she takes them over. Every single one of the non-attributed quotes or the non-attributed portions of her article are found in the very source material she gave them herself. She gave them the tools to find her guilty if she had reasonably expected in those circumstances that she was going to be vetted for plagiarism while she was still working on it. Negligence every day in courtrooms in every state, 10 or 20 times per state. Juries are asked to decide objectively, not subjectively, I agree it can't be subjective, but objectively in a given set of circumstances is it reasonable applying your common sense? Our point is that should not be made into a judgment by a very, very smart judge removed from the circumstances where the judge doesn't even discuss the facts involved like you all have been doing. What about this? What about that? None of that was discussed. We would like this reversed with the jury trial. And if Mr. Lapp is correct, I don't think he is, but if he is about all of these things, then he'll win under the proper standard which is a question of fact. Thank you very much.